UPINGTON v. POOLER.

(*Supreme Court, General Term, First Department.* June 3, 1892.)

1. WILLS—CONSTRUCTION—RIGHTS OF LEGATEES.

D. owned three lots on the corner of S. and E. streets, fronting about 23 feet each on S. street, and about 128 feet in depth. They were numbered from the corner 13, 15, and 17 S. street, respectively. During D's. lifetime, her lessee, without any regard to interior lines, and using the lots as one lot, erected thereon seven buildings, which, under the terms of the lease, were afterwards to become the property of D. Three of the buildings fronted on S. street and four on E. street. Three of the E. street buildings extended across lot 13, and about 14 feet on lot 15. Plaintiff took under D.'s will the "rents, issues, and profits of my house and lot of land known as 'No. 15 S. Street' * * * during her life, "without power to alienate, and at her death to her descendants according to the law of descents; in the event of no descendants surviving plaintiff, then to defendant in fee forever, if he survives her; otherwise over to another." Defendant took as devisee "my house and lot known as 'No. 17 S. Street,'" and as heir succeeded his father, who took as devisee "my house and lot known as 'No. 13 S. Street,' * * * being about 23 feet wide on S. street, by about 128 feet in length on E. street." *Held,* in an action for rents collected, that defendant was not entitled to that part of the buildings which projected onto lot 15.

2. SAME—DESCRIPTION OF PROPERTY.

No one but plaintiff having any interest in the buildings on lot 15, and it being testatrix's intention to dispose of all her property, plaintiff is entitled, under the description of "my house and lot, " to the whole of lot 15.

3. SAME—ACQUIESCENCE OF PARTIES.

Where, after D.'s death, her lessee brought suit for a renewal of the lease, and the referee in his report, which was confirmed, found that plaintiff was entitled to one third of the ground rents accruing under D.'s lease, after which, for 23 years, defendant conceded plaintiff's right to have one third of the rents from the entire three lots, even though there was no adjudication binding on defendant, the parties having acquiesced in it, and the court below having adopted such rule, it will not be disturbed.

4. APPEAL—RECORD—EVIDENCE.

A statement in the case on appeal, that "the foregoing is all of the testimony taken on the trial of this action," is not a sufficient statement that the case contains all the evidence introduced at the trial.

Appeal from circuit court, New York county.

Action by Marie T. Upington against Louis J. Pooler. From a judgment for plaintiff, defendant appeals. Affirmed.

Testator's will gave to defendant's father, from whom defendant inherited as heir at law, "my house and lot known as 'No. 13 Spring street,' in the city of New York, being about twenty-three feet wide on Spring street, by about one hundred and twenty-eight feet in length on Elizabeth street,"

and to plaintiff "the rents, issues, and profits of my house and lot known as 'No. 15 Spring Street,' in the city of New York, * * * during her life, to her sole and separate use, * * * without any power on her part to incumber, alienate, or anticipate the same, or any part thereof. From and after the death of [plaintiff] I give in fee simple, forever, the rents, issues, and profits unto [plaintiff's descendants,] if any shall be living at her death; * * * such descendant or descendants to take the same, if one, solely; if more than one, in such shares and proportions as they would be, respectively, entitled to take the same house and lot if they were her real estate, and she had died without a surviving husband, and the law of descents existing at the date of this will had remained unaltered; and in case [plaintiff] shall not leave any descendant" her surviving, then to defendant in fee forever, if he survives her; otherwise over to another.

Argued before VAN BRUNT, P. J., and O'BRIEN and BARRETT, JJ.

*George Bliss*, for appellant. *James M. Hunt*, for respondent.

O'BRIEN, J. The action was brought in form as for money had and received, and the questions litigated relate to the division of rents received from certain premises at the corner of Spring and Elizabeth streets, in the city of New York. The plaintiff claimed to be entitled to one-third of the net rents received from the property during the time covered by this action, and alleged that the defendant was entitled to two-thirds thereof; but, the latter having collected a greater amount, a recovery is sought for the excess over such two-thirds of the rents received by the defendant. From the judgment in favor of plaintiff this appeal is taken. The facts show that one Mary Davy owned certain property on the northwestern corner of Spring and Elizabeth streets, in the city of New York, a lease of which she made to one John Muhlenbrinck, who, in pursuance of a covenant in the lease, erected buildings on the lots. These buildings, seven in all, fronted in part on Spring street and in part on Elizabeth street. After. the buildings had been erected by the lessee, Mary Davy died, leaving a will in which she provided in respect to plaintiff's interest in the property, subject to certain annuities, as follows: "I give the rents, issues, and profits of such last-mentioned house and lot [described as 'my house and lot of land known as " No. 15 Spring Street"'] to my grandniece. * * *" The defendant, as heir at law, inherited from his father a portion of the property, and as devisee under the will another portion. The property which he took as devisee under the will was described as "my house and lot known as 'No. 17 Spring Street;'" and the other portion inherited by defendant. from his father is thus described: "My house and lot known as 'No. 13 Spring Street,' in the city of New York, being about twenty-three feet wide on Spring street, by about one hundred and twenty-eight feet in length on Elizabeth street."

The questions in dispute arise from the fact that by the conveyances under which Mary Davy got title, and in the instrument by which she leased to Muhlenbrinck, the property in question was described as being known as lots of certain numbers on the "Bayard Farm Map," so called; while Muhlenbrinck erected his buildings without any regard to the interior lines of those lots, though keeping within their exterior lines. Though some of the buildings erected fronted on Elizabeth street, she described none of the property as so fronting. In addition to the building on the corner, four other buildings were erected fronting on Elizabeth street, three of which not only extended across the entire 23 feet of width ascribed to the Spring street lot, but about. 14 feet further to the rear.

The principal question presented is whether or not the defendant, in addition to the property which was designated by Mrs. Davy as "No. 13 Spring Street," and as being about 23 feet wide on Spring street, by about 128 feet in length on Elizabeth street, is entitled to the rentals receivable from the por-

tions of the Elizabeth street houses which project beyond the limit of the description, as fixed, into the adjoining lot some 14 feet, and which lot, prior to the erection of such houses, was known as "No. 15 Spring Street." There would be much force in the contention of the appellant that the testator in the descriptions intended to devise the property as actually occupied and built upon at the time of her death, were it not that this is clearly excluded by the particular description which is affixed to the house and lot known as "No. 13 Spring Street," which by metes and bounds limits it to 23 feet on Spring street, by 128 feet in length on Elizabeth street. In addition to this limitation by metes and bounds, we must remember that the entire premises were leased by Mrs. Davy to Muhlenbrinck as three lots, but no restriction was placed as to the manner in which he should build thereon, and he was at liberty to use them as though they constituted but a single plot. It is true that a portion of the finding made by the trial judge, that the buildings erected by Muhlenbrinck under his lease with Mary Davy made use of the three lots of ground in question as a single lot, is excepted to. But when we recall the fact that seven buildings were erected upon three lots, without regard to the lot divisions, and three of these buildings extend transversely across the lots, which are only about 23 feet wide, to a depth of 38 feet, evidence is furnished that the three lots were used by the builder as though they constituted a single lot. Under the covenant in the lease, these were to be erected at the expense of the lessee, and provision was made therein by which, at the termination of the lease, Mrs. Davy was to pay for such buildings. Had she, therefore, erected the houses herself, or had she not placed a descriptive limitation upon the corner lot, there would be room for holding with the appellant that it was intended to give to the devisee of the corner lot all the buildings fronting thereon, whether projecting backwards upon the other lots or not. This, however, as shown, is not reconcilable either with the language used by the testator or the facts appearing upon the record.

This hypothesis being excluded, but one other remains, which was the one found by the learned trial judge as contended for by the plaintiff. It may be true that if the plaintiff had to maintain her position solely upon the description relating to her lot, without reference to other facts or provisions of the will, much difficulty will be found in supporting her view. While it may be an inverse mode of reasoning, instead of establishing a fact directly, to resort to other facts for the purpose of excluding any other reasonable hypothesis, still such conclusions are none the less to be relied upon where more direct and certain evidence is wanting. In other words, it may be demonstrated with reasonable certainty that it was not the intention of the testator— which is the primary canon of construction—to give, in addition to the corner lot, all the buildings erected thereon, whether they projected backwards upon another lot or not. Having thus eliminated the defendant's interest in any portion of the houses other than those erected upon the lot owned by him, and as no one else but the plaintiff has any interest therein, we are forced to conclude, as the testatrix's intention to dispose of all her property is made evident, that the plaintiff was to have, under the description of "my house and lot," not only the portion of the lot as actually occupied by the building fronting upon Spring street, but was to have the whole of the lot which was formerly known as "No. 15 Spring Street," and which, as shown, covered the same premises as was designated on the Bayard farm map, running back and embracing the land upon which 14 feet of the rear of three of the houses fronting on Elizabeth street were placed.

In favor, however, of plaintiff's position, as showing her to be entitled to one third of the lands, in addition to what has already been said, much force as an argument, if it is not conclusive as an adjudication, is to be derived from the prior proceedings, involving in some respects the same questions here presented, and also from the construction which, by acquiescence, the

parties themselves seem to have given to the will of Mrs. Davy. In the suit brought by Muhlenbrinck for a renewal of the lease, the plaintiff applied to have one third of the rents in the hands of a receiver appointed in that suit paid over to her. Upon the reference ordered, the question was determined in her favor, though this report does not appear to have been confirmed, but, instead, another reference was ordered to ascertain what proportion of the ground rent, under the terms of the Muhlenbrinck lease, the premises had earned since the appointment of the receiver. This was necessary because, according to the claim made by Muhlenbrinck, he was entitled to all the proceeds over and above the ground rent which he was liable to pay for all the premises. Pending decision, nothing could be distributed beyond the amount of such ground rent. In his report the referee found, and it was confirmed, that the plaintiff was entitled to one third thereof. To destroy the force of an adjudication, the appellant insists that a distinction is to be made between the question of the ground rent and the question of the rents from the buildings, which latter, he claims, was never passed upon by the court. With respect, however, to the ground rent, it seems reasonably clear that, except upon the theory that the plaintiff owned the land the entire depth, and with a frontage equal to that of No. 38, a conclusion by the referee could not have been reached that plaintiff was entitled to one third of such ground rent. We are inclined to think, therefore, that the question of the extent of plaintiff's right in the property was directly involved upon that reference.

It is thus made to appear that for at least 23 years prior to the commencement of this action the defendant has conceded, part of the time without any apparent objection, and part of the time under the coercion of the order of the court, that this plaintiff was entitled to one third of the rents from the entire premises in question, which she has received; and, though we assumed that no adjudication binding upon the defendant has heretofore been made, we have it made clearly to appear that the parties themselves have construed their respective rights in these premises to be the same as adjudged by the court below. If we conclude, therefore, that plaintiff has a right to the rents and profits arising from the use of one third of the entire property, it is difficult to see what better rule could have been adopted for determining the value than to take an exact one third thereof. This is the rule that the parties seem to have acquiesced in, and which, upon the facts presented, the learned judge below thought to be right and proper; and his conclusion we find no reasons for disturbing.

A question was made in respect to inconsistencies in the findings, it being claimed that the learned judge had marked certain findings of appellants "as already found." But an examination will show that the reason therefor was that, having already made certain findings for the plaintiff which were inconsistent with those presented by the defendant, he, in effect, refused to find them otherwise than "as already found;" and, so far as the appeal is concerned, we have regarded them as though they had been refused, which was undoubtedly the position taken by the learned judge below. So far as any finding of fact is concerned, we might, without considering it, have disposed of it upon the objection made by the respondent, that no such question of fact is before this court upon this appeal. It is well settled that, unless the case upon appeal contains a statement that it contains all the evidence introduced at the trial, the facts are not before the general term for review. This case contains no such statement, although we find in it the following: "The foregoing is all of the testimony taken on the trial of this action." In addition to the testimony which fell from the lips of witnesses, considerable evidence of a documentary nature was introduced, as claimed by the respondents, which has been omitted from the case. Where that is made to appear, findings of fact will not be reviewed on appeal, for the reason that evidence other than that appearing in a case may have had an important bearing upon the determination of the question

submitted to the trial judge. In this case, however, having reached a determination upon the record as made by the appellant, adverse to his contention, we thought best to make known the same, rather than put appellant to the trouble of making another case, we assuming that nothing would aid him; and the result reached being favorable to respondent, she is not prejudiced by our review of the facts. Upon the case as made, we find no valid grounds for disturbing the judgment of the court below, and are therefore of opinion that it should be affirmed, with costs.

VAN BRUNT, P. J., concurs in result. BARRETT, J., concurs.